UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| FRANK D. JACKSON,<br><br>                Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>                Defendant. | 3:15-cv-00266-MMD-VPC<br><br>**REPORT AND RECOMMENDATION<br>OF U.S. MAGISTRATE JUDGE** |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's motion for reversal and/or remand (#12), defendant's cross-motion to affirm and opposition (#13), and plaintiff's reply and opposition (#14). For the reasons set forth herein, the court recommends that plaintiff's motion be granted, and defendant's cross-motion be denied.

                **I.      FACTUAL AND PROCEDURAL BACKGROUND**

On November 28, 2011, Frank Jackson ("plaintiff") protectively filed a claim for Social Security Disability Insurance ("SSDI") benefits under Title II of the Social Security Act.[1] (Administrative Record ("AR") 209–12.) Soon thereafter, on December 5, 2011, plaintiff filed for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. (*Id.* at 213–18.) In both applications, plaintiff alleged a disability onset date of October 1, 2010. (*Id.* at 209, 213.) The Social Security Administration denied plaintiff's applications in the first instance on June 8, 2012, and upon reconsideration on February 8, 2013. (*Id.* at 118–21, 125–31.)

---

[1] Plaintiff's SSDI application is dated November 29, 2011, but November 28 is the date used by the ALJ in her disability determination. (*See* AR 23.) The discrepancy makes no difference for the purpose of this court's review.

On September 3, 2013, plaintiff and his attorney appeared at a hearing before Administrative Law Judge ("ALJ") Eileen Burlison. (*Id.* at 35–69.) The ALJ issued a written decision on October 4, 2013, finding that plaintiff had not been disabled at any time between the alleged onset date and the date of the decision. (*Id.* at 24–34.) Plaintiff appealed, and the Appeals Council denied review on April 20, 2015. (*Id.* at 1–7.) Accordingly, the ALJ's decision became the final decision of the Commissioner ("defendant").

Having exhausted all administrative remedies, plaintiff filed a complaint for judicial review on May 19, 2015 (#1-1). Plaintiff contends the ALJ failed to articulate legally sufficient reasons for finding his testimony not fully credible. (#12 at 6–11.) As a result, plaintiff argues, the ALJ's nondisability determination is not based on substantial evidence and remand for further proceedings is appropriate. (*Id.*)

## II.   STANDARD OF REVIEW

The initial burden of proof to establish disability in a claim for SSDI and SSI benefits rests upon the claimant. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To satisfy this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

This court has jurisdiction to review an ALJ's decision to deny a claim for benefits after the claimant has exhausted all administrative remedies. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161–62 (9th Cir. 2012). The court must affirm the ALJ's decision unless it rests on legal error or is unsupported by substantial evidence in the administrative record. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). The substantial evidence standard is not onerous. It is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

Although the ALJ need not discuss every piece of evidence in the record, she cannot ignore or omit evidence that is significant or probative. *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012). The ALJ's discussion must adequately explain the decision in light of such evidence. "The ALJ, not the district court, is required to provide specific reasons for rejecting [the evidence.]" *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (specifically discussing rejection of lay testimony). The district court's review is thus constrained to the reasons asserted by the ALJ. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision; it "may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotation omitted). Where "the evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (internal quotation omitted). The ALJ alone is responsible for determining credibility and resolving ambiguities. *Garrison*, 759 F.3d at 1010.

### III.   DISCUSSION

**A.   SSDI and SSI claims are evaluated under a five-step sequential process.**

The Commissioner follows a five-step sequential process for determining whether a claimant is "disabled" for the purposes of SSDI and SSI. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Step one directs the ALJ to determine whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If so, the claimant is not disabled and the Commissioner denies the claim. *Id.* §§ 404.1520(b), 416.920(b).

The second step requires the ALJ to determine whether the claimant's medically determinable impairment is "severe." *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "Severe" impairments are those that significantly limit the claimant's physical or mental ability to do basic work activities. *Id.* §§ 404.1520(c), 416.920(c). The Commissioner will deny the claim if the claimant lacks a severe impairment or combination of impairments. *Id.*

At step three, the claimant's impairment is compared to those listed in the agency's regulations at 20 C.F.R. Pt. 404, Subpart P, Appendix 1. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The list in Appendix 1 "define[s] impairments that would prevent an adult, regardless of his [or her] age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (quoting 20 C.F.R. § 416.925(a)) (emphasis in original). Where the claimant's impairment is on the list, or is equivalent to a listed impairment, and the claimant also meets the corresponding durational requirement, the claimant is deemed disabled. 20 C.F.R. §§ 404.1520(d); 416.920(d). However, for an impairment to match a listing, "it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Zebley*, 493 U.S. at 530 (emphasis in original).

If the Commissioner does not find disability at step three, review of the claim proceeds to step four. There, the ALJ considers whether the claimant can perform past relevant work despite the severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If so, the claimant is not disabled. *Id.* §§ 404.1520(e), 416.920(e). The ALJ will find that the claimant can return to past relevant work if he or she can perform the "actual functional demands and job duties of a particular past relevant job" or the "functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation omitted).

In making the step four determination, the ALJ considers the claimant's residual functional capacity ("RFC") and the physical and mental demands of the work previously performed. 20 C.F.R. §§ 404.1520(f), 416.9209(f); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). The RFC is the most the claimant can still do despite his or her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). To evaluate the claimant's RFC, the ALJ must assess all of the relevant evidence, including medical reports and descriptions by the claimant and others of the claimant's limitations. *See id.* §§ 404.1545(a)(3); 416.945(a)(3). The ALJ is not, however, required to accept as true every allegation the claimant offers regarding his or her limitations. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007). The ALJ must follow a two-step inquiry where

the claimant alleges subjective pain or symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007); *see also* SSR 96-7p, 61 Fed. Reg. 34483 (July 2, 1996). First, the ALJ determines "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036 (internal quotation omitted). Second, where the first test is met and no evidence suggests that the claimant is a malingerer, the ALJ may reject the claimant's allegations only by articulating "clear and convincing" reasons for doing so. *Id*.

The "clear and convincing" standard is the most demanding standard in Social Security case law, *Garrison*, 759 F.3d at 1015, and it requires the ALJ to "specifically identify the testimony she or he finds not to be credible and [to] explain what evidence undermines the testimony," *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). Thus, the ALJ must cite to the record and discuss specific evidence therein. *See Vasquez v. Astrue*, 572 F.3d 586, 591–92, 592 n.1 (9th Cir. 2008); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). "[S]imply reciting the medical evidence in support of his or her [RFC] determination" will not suffice. *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). The focus, however, is ultimately upon the reviewing court. The credibility determination "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." *Rollins v. Massanari*, 261 F.3d 853, 856–57 (9th Cir. 2001) (internal quotation omitted).

Permissible bases for finding the claimant less credible include conflicts between his or her allegations and daily activities, *Orn*, 495 F.3d at 636, an "unexplained or inadequately explained failure to seek treatment," *Molina*, 674 F.3d at 1112, and a lack of objective medical evidence, *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Medical opinions are also probative evidence. 20 C.F.R. §§ 404.1529(c), 416.929(c) (describing factors relevant to credibility); *see also Rollins*, 261 F.3d at 857.

If step four demonstrates that the claimant cannot do the work he or she did in the past, the burden shifts to the Commissioner to establish, at step five, that the claimant can perform jobs available in the national economy. 20 C.F.R. §§ 404.1560(c), 416.960(c). There, the ALJ must

consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007). The ALJ will typically reference "the grids," under which a finding of disability may be directed, and also consider the testimony of a vocational expert. *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). Where the grids do not direct a finding of disability, the ALJ must identify other occupations that the claimant can perform and which are available in significant numbers in the claimant's region or in several regions of the United States. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1560(c), 416.960(c). If the ALJ establishes that the claimant's RFC and transferable skills allow him or her to perform other occupations, he or she is not disabled. 20 C.F.R. §§ 404.1566, 416.966. Conversely, if the ALJ concludes that the claimant cannot adjust to any other work, he or she is disabled and entitled to benefits. *Id*. §§ 404.1520(g), 416.920(g).

**B.    The ALJ followed the five-step process and concluded that plaintiff was not disabled.**

In reviewing plaintiff's claims for benefits, the ALJ followed the five-step process described above. The ALJ first determined that plaintiff had not engaged in substantial gainful activity since October 1, 2010, the alleged onset date. (AR 25.) At step two, the ALJ found that plaintiff's diabetes with neuropathy and benign prostatic hyperplasia are severe impairments that more than minimally limit his ability to perform basic workplace activities. (*Id.*) The ALJ also considered evidence regarding a variety of other diagnoses, but concluded that the evidence did not show those conditions to be severe or to cause any secondary issues warranting additional functional limitations. (*Id.*) At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment. (*Id.* at 26.)

The ALJ proceeded to step four and made several findings. To begin, the ALJ concluded that plaintiff's RFC permitted him perform light work as defined by 20 C.F.R. §§ 404.1567(c) and 416.967(b), except that he can stand or walk for eight hours in an eight-hour day; he can sit for four hours in an eight-hour day; he can occasionally perform postural activities; he should avoid temperature extremes; and he requires proximity to a restroom. (*Id.*) In so concluding, the

1   ALJ found that plaintiff's impairments could be expected to cause the symptoms he had alleged,
2   but that his statements regarding the intensity, persistence, and limiting effects of those symptoms
3   were not entirely credible.  (*Id*. at 27.)  Finally, based on the evidence in the record and the
4   testimony of a vocational expert, the ALJ concluded that plaintiff was capable of performing his
5   past relevant work as a garage supervisor.  (*Id.* at 29.)

6   A claimant is deemed not disabled at step four if capable of performing past relevant
7   work.  20 C.F.R. §§ 404.1560(b)(3), 416.960(b)(3).  Thus, having found that plaintiff could
8   perform his past relevant work, the ALJ held that he was not disabled and denied his claims for
9   benefits.  (AR 30.)

10  **C.      The ALJ improperly discounted plaintiff's subjective pain testimony.**

11  Plaintiff challenges just one aspect of the ALJ's decision: her adverse credibility finding.
12  Plaintiff contends that the ALJ failed to articulate clear and convincing reasons for discounting
13  plaintiff's testimony, and, therefore, that her disability determination lacks the support of
14  substantial evidence.  The court agrees.

15  In her decision, the ALJ found plaintiff's allegations of disabling symptoms and
16  limitations less than fully credible for four reasons: (1) a lack of strong support from the objective
17  medical evidence, (2) repeated reports of generally stable symptoms, (3) plaintiff's wide range of
18  reported activities, and (4) plaintiff's failure to comply with his diabetic treatment.[2]  (*Id.* at 27–
19  28.)  The court addresses each in turn.

20  First, the ALJ concluded that the objective medical evidence did not support plaintiff's
21  allegations of disabling neuropathic pain.  This was a clear and convincing reason to discount
22  plaintiff's testimony.  Plaintiff argues that "[t]he record is replete with complaints of neuropathic

---

[2] The parties disagree as to how many reasons the ALJ cited.  Plaintiff insists that the ALJ discounted plaintiff's complaints solely because they were not supported by the objective medical evidence, but also discusses plaintiff's failure to follow the prescribed treatment.  (#14 at 4; #12 at 9–10.)  Defendant discusses both those reasons, as well as the reports of stable symptoms. (#13 at 6–7.)  Plaintiff counters that defendant is providing post hoc rationalizations for the ALJ's error.  (#14 at 4.)  Looking to the entirety of the ALJ's decision, the court identifies the four reasons discussed herein.  (*See* AR 26–28.)  While they do not all appear in the same place in the decision, there is no requirement that the ALJ structure her rationale in any particular format.  *See Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001) (finding that the ALJ did not err by placing support for his step three determination elsewhere in the decision).

7

pain," including consistent findings regarding "positive pins and needles and numbness in the lower extremities and feet," and shows that plaintiff was prescribed morphine and oxycodone as a result. (#12 at 9–10.) While true, plaintiff's argument misses the point. The ALJ did not state that there was no evidence to support plaintiff's allegations of neuropathic pain, but rather, that the available record did not support a finding of *disabling* pain. (AR 27.) The ALJ supported her determination by pointing to evidence in the record that plaintiff retained full range of motion, and did not experience tenderness, edema, foot ulcers, or lesions—symptoms that, if present, would tend to indicate that plaintiff's pain was disabling. (*Id.*) Plaintiff does not contend that those cited records were inaccurate or unrepresentative.

However, while the ALJ may properly consider the lack of supporting medical evidence, such a finding "cannot form the sole basis for discounting pain [and limitations] testimony." *Burch*, 400 F.3d at 681. Here, the ALJ's remaining reasons do not adequately support her final credibility determination.

The ALJ next cited "the repeated reports of generally stable symptoms." (AR 28.) In support of her conclusion, the ALJ identified medical records from March to December 2011, which showed plaintiff's blood sugar levels as generally falling between 100 and 200. (*Id.* at 27 (citing AR 368, 370, 372, 377, 382).) The ALJ also referenced a July 2013 medical record, in which plaintiff "reported he was able to keep his blood sugar in the mid-100 range." (*Id.* (citing AR 539).) According to the ALJ, such a report was "a sign of stable diabetes with treatment." (*Id.*) However, the ALJ ignored contrary evidence in the record. The same July 2013 record also described plaintiff's diabetes as "uncontrolled" (*id.* at 540), while other records demonstrate that plaintiff's blood sugar levels fluctuated substantially over time. In June 2011, plaintiff's reported blood sugar ranged from 220 to the low 300s (*id.* at 375); between February and December 2012, his blood sugar ranged from the high 100s to mid-200s (*id.* at 459–500); and in May, 2013 his blood sugar spiked into the 400s (*id.* at 539). During the February to December 2012 period, plaintiff's medical provider consistently recommended that he increase his medication dosage when his blood sugar levels surpassed 200, further suggesting that his condition was not managed or stable. (*Id.* at 459–500.) Because the ALJ selectively parsed the medical evidence to support

8

her conclusion, the court is unable to conclude that she did not "arbitrarily discredit [plaintiff's] testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (internal quotation omitted).

The ALJ's third reason, plaintiff's "wide range of reported activities," also lacks the support of substantial evidence. The ALJ's decision discusses just one activity that plaintiff is able to perform: cleaning his home. (AR 27.) Plaintiff's hearing testimony, however, clarifies that he only cleans "for as long as he can stand up." (*Id.* at 44.) In addition, plaintiff's function report states that his cleaning efforts are limited to dishes, which take him about twenty minutes every three days; laundry, which he is able to sit while he folds; vacuuming which takes ten minutes every three days; and dusting, which takes ten minutes once or twice a month. (*Id.* at 257.) The court fails to see how such minimal activities are inconsistent with plaintiff's testimony, or come close to meeting the threshold for transferable work skills. *See Orn*, 495 F.3d at 639.

Finally, the ALJ impermissibly discounted plaintiff's testimony because he was "non-compliant with his diabetic treatment regime." (AR 27–28.) An inadequately explained failure to follow a prescribed course of treatment does bear on credibility. *Smolen*, 80 F.3d at 1284. However, the Ninth Circuit has also emphasized that "[d]isability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds." *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995); *see also Orn*, 495 F.3d at 638. That is precisely the case here: as defendant concedes, plaintiff was unable to fill his prescriptions, including insulin, due to financial distress. (*See* AR 385; #13 at 7.) "Thus, the failure to follow treatment for [diabetes] tells us little or nothing about [plaintiff's] credibility." *Orn*, 495 F.3d at 638. Defendant maintains that plaintiff also failed to follow the doctor's suggestion to eat a high fiber diet and drink more water, so as to relieve his problems with constipation. (#13 at 7 (citing AR 385).) This argument, however, has no basis in the ALJ's decision. The court cannot "affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss." *Connett*, 340 F.3d at 875.

Where an ALJ errs in part of his or her credibility determination, the error is harmless so long as there are other valid reasons showing that substantial evidence supports the ALJ's decision. *Molina*, 674 F.3d at 1115. Here, however, the ALJ provided just one valid reason for her adverse credibility finding: a lack of support from the objective medical evidence. Because this, alone, is not a proper basis on which to affirm the ALJ's decision, *see Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), the ALJ's errors were not harmless.

**D.     Remand for further proceedings is appropriate.**

When a court reverses an ALJ's decision, it may remand the case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. Generally, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (internal quotation omitted). Only where "further administrative proceedings would serve no useful purpose" do courts properly remand for an award of benefits. *Smolen*, 80 F.3d at 1292.

Here, plaintiff does not advocate for an immediate award of benefits (*see* #12 at 11), and, in any event, the court concludes that such relief is not warranted. Although the ALJ erred, it is not clear from the record that she would be required to find plaintiff disabled even if she fully credited plaintiff's pain and limitations testimony. Accordingly, remand for further proceedings is the proper course.

## V.     CONCLUSION

The court concludes that substantial evidence does not support the ALJ's determination of nondisability. The reasons for which the ALJ discounted plaintiff's pain and limitations testimony were not clear, convincing, or supported by substantial evidence. Because further administrative proceedings are necessary to determine whether plaintiff is entitled to benefits, the court recommends that plaintiff's motion (#12) be granted, and this matter be reversed and remanded to the agency. Defendant's cross-motion to affirm (#13), accordingly, should be denied.

1.     Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.

1  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.   RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for reversal and/or remand (#12) be **GRANTED** and defendant's cross-motion to affirm (#13) be **DENIED**;

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close this case.

**DATED**: March 21, 2016.

_____
**UNITED STATES MAGISTRATE JUDGE**